Philip J. Sciortino v. Commissioner.
Sciortino v. Commissioner
Docket No. 1156-71.
United States Tax Court
T.C. Memo 1972-218; 1972 Tax Ct. Memo LEXIS 40; 31 T.C.M. (CCH) 1073; T.C.M. (RIA) 72218; October 19, 1972, Filed Tried in New Orleans, Louisiana. Joseph S. Russo, 693 Central Ave., New Orleans, La., for the petitioner. Paul H. Waldman, for the respondent. FEATHERSTON
Memorandum Findings of Fact and Opinion FEATHERSTON, Judge: Respondent determined deficiencies and additions to tax in petitioner's income tax for the years 1962 through 1967 as follows: Additions to Tax
Year
Deficiency
(Section 6651(a))
1962
$ 339.62
$ 84.91
1963
1,214.55
303.64
1964
41.54
1965
1,049.91
1966
1,646.22
1967
1,851.55
*41 Other matters having been settled between the parties, the only issue for decision is whether petitioner furnished more than one-half of the support of each of his four sons during 1965 and 1966 within the meaning of section 152(a). [1]
Petitioner was a legal resident of New Orleans, Louisiana, at the time his petition was filed. He filed Federal income tax returns for 1965 and 1966 with the district director of internal revenue, New Orleans, Louisiana. Prior to 1965, petitioner and his then wife, Regina Ortolana Sciortino (hereinafter referred to as Regina), separated, and starting in October 1964 he was obligated under a court decree to pay $400 per month for the support of their four sons. By later court action, the amount of his payments was lowered to $300 per month commencing on August 5, 1965. The four sons, Philip, Jr., George, Ronnie, and Tommy, were 15, 14, 12, and 11 years of age, respectively, in 1965. From the time of the separation until October 7, 1966, Regina lived in the family residence located at 912 Constantinople Street in New Orleans. She *42 used one room in the house for the conduct of a catering business. The children also stayed in the house during this period on their frequent visits home from private boarding schools, and Tommy lived there for part of 1965 while he was attending a local nonboarding school. During 1965 Tommy lived with Regina for about 9 months while the other children stayed with her for at least 5 months. On or about October 7, 1966, Regina moved into an apartment with a monthly rent of $255, and petitioner moved into the house. After this change in residences, when Philip, George, and Ronnie visited home they stayed in the apartment with Regina. Tommy lived in the house with petitioner for the remainder of the year. During 1966 Tommy resided with Regina for about 4 months and with petitioner for 3 months. The other children were with Regina for approximately 5 months. Although the house was equally owned by petitioner and Regina, petitioner made all the required mortgage payments on it during the years in issue. The four children all attended private schools during 1965 and 1966. Philip attended St. Paul's School (hereinafter referred to as St. Paul's) in Covington, Louisiana, during both years. *43 George attended St. Paul's from January until June of 1965 and from September of 1966 until December of that year. He attended St. Vincent de Paul Seminary in Beaumont, Texas, from September of 1965 until June of 1966. Ronnie attended St. Paul's during both years. Tommy attended St. Francis of Assisi School in New Orleans from January until June of 1965, St. Stanislaus School in Bay St. Louis, Mississippi, from September of 1965 until June of 1966, and St. Stephen's School in New Orleans from September until December of 1966. The tuition and board for students at St. Paul's for the school year 1964-1965 were $1,200 and for the years 1965-1966 and 1966-1967 they were $1,500. The annual incidental expenses were $180 for the 1964-1965 school year and $230 for the other two school years. If two children from the same family were attending the school, there was a 10-percent discount on each child's tuition and board. If a third or fourth child was attending the school, each received a 20-percent discount on his tuition and board. 1075 The tuition and board at St. Vincent de Paul Seminary for the 1965-1966 school year were $500. The tuition at St. Francis of Assisi School *44 and St. Stephen's School was about $30 a month. The total costs incurred at St. Stanislaus School for the 1965-1966 school year were $1,784.55. Pursuant to the court decree, petitioner paid $4,300 for child support in 1965 and $2,700 in 1966. Petitioner ceased making payments in September of 1966 because the decree expired at that time. In addition to the required support payments, petitioner made other expenditures from which his children received benefit in 1965 and 1966. During those years, petitioner paid $254 a year for property insurance to cover the residence and $20 a month for Blue Cross medical insurance coverage for the entire family. The property insurance covered the part of the house Regina and the children used, as well as the room Regina used to conduct her catering business. In 1965 Philip and Ronnie each charged $150 worth of clothes to two of petitioner's store accounts. In 1966 petitioner paid $150 to take Tommy on a vacation, $171.67 for his clothes, $60 to have him tutored, $120 for his tuition, and at least $180 to support him from October to December of 1966. The total amounts expended for the support of each of the children during 1965 and 1966 were *45 as follows: TOTAL SUPPORT
1965
1966
Item
Philip
George
Ronnie
Tommy
Philip
George
Ronnie
Tommy
Education
$1,380
$ 900
$1,380
$1,175
$1,410
$ 960
$1,410
$ 880
Food
330
330
330
530
330
330
330
330
Lodging
35
35
35
Property Ins.
15
15
15
15
12
12
12
25
Maid
85
85
85
85
85
85
85
65
Telephone 10
10
10
10
10
10
10
10
Utilities
24
24
24
24
24
24
24
24
Allowance
93
93
93
132
93
93
93
93
Tra nsportation
100
100
100
100
100
100
100
100
Charity
50
50
50
50
50
50
50
50
Clothing
250
250
250
250
250
250
250
250
Medical and Dental
520
100
520
100
520
100
520
100
Toys
20
20
20
20
20
20
20
20
Tri ps
300
300
300
150
Gifts
40
40
40
40
40
40
40
40
Laundry
30
30
30
30
30
30
30
30
Tutoring
60
Total $2,947
$2,047
$3,247
$2,561
$3,309
$2,139
$3,309
$2,227 1076 Petitioner contributed the following amounts to support each of these children during those years: PETITIONER'S SUPPORT
CONTRIBUTIONS
1965
1966
Item
Philip
George
Ronnie
Tommy
Philip
George
Ronnie
Tommy
Required Payments
$1,075
$1,075
$1,075
$1,075
$675
$675
$675
$ 675
Property Ins.
15
15
15
15
12
12
12
25
Medical Ins.
40
40
40
40
40
40
40
40
Clothes
150
--
150
--
--
--
--
[1] 172
Vacations
--
--
--
--
--
--
--
150
Tutoring
60
Tommy's Expenses-- Oct.-Dec. 1966
--
--
--
--
--
--
--
180
Tommy's Tuition
120
Total $1,280
$1,130
$1,280
$1,130
$727
$727
$727
[2] $1,422
*46 Ultimate Findings of Fact Petitioner provided more than one-half of the support of George in 1965 and of Tommy in 1966. Petitioner did not provide more than one-half of the support of Philip, Jr., Ronnie, and Tommy in 1965 or more than one-half of the support of Philip, Jr., Ronnie, or George in 1966. Opinion The sole question is whether petitioner furnished more than one-half of the support of each of his four sons during 1965 and 1966. This is a factual issue on which petitioner has the burden of proof. As this Court has previously stated: Section 152(a) defines the term dependent as here applicable as meaning a son or daughter of the taxpayer "over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer." Thus it is petitioner's burden to establish not only what amount he contributed toward their support, but he must also show in some way that it exceeded one-half of their total support. . *47 In computing the amount each parent contributed for the support of these children, we have not included any portion of the rental value of the house because the house was equally owned by the spouses. Each of them is, therefore, deemed to have contributed half of the value of the house. This is true even though the mortgage payments on the house were made by petitioner during the years in question. (C.A. 4, 1970), affirming per curiam a Memorandum Opinion of this Court; . We find no support for petitioner's argument that the result should be different in this case. 1077 Likewise, we cannot accept petitioner's argument that, since he paid only $600 per month to support the family while they were living together, the figure could not have been greater than that for the years in question. According to petitioner's own testimony, his $600-per-month figure did not include the educational expenses for the children. Moreover, the record shows quite clearly that sums in excess of that amount were actually spent for the children's support during the years prior to the separation since *48 Regina put some of her own money into the family checking account. Petitioner's remaining contention is that we should not believe Regina's testimony concerning her expenditures for the children since it was "utterly contradicted by her own testimony * * * [during the divorce proceeding] on January 5, 1967." Although the amounts of support to which she testified were evidently inflated, we do not agree that her testimony "is totally unworthy of belief and has no probative value." Our Findings reflect our evaluation of the record as a whole, including the conflicting testimony of petitioner and Regina. Since petitioner provided more than one-half of George's support in 1965 and more than one-half of Tommy's support in 1966, he is entitled to claim each of them as dependents under section 151(e) for the respective years. He has not shown that he is entitled to the other disputed dependency exemption deductions. The remainder of the issues having been settled, Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue.↩
1. Rounded figure (petitioner's testimony indicated figure as actually being $171.67). ↩
2. Rounded figure (in accordance with rounding of figure in fn. 1; actually $1,421.67).↩